NOT FOR PUBLICATION                                          **CASE CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEBORAH GILL,<br><br>                    Plaintiff,<br><br>          v.<br><br>PLAN ADMINISTRATOR OF THE CHUBB GROUP OF INSURANCE COMPANY LONG TERM DISABILITY PLAN, UNUM PROVIDENT CORPORATION, UNUM LIFE INSURANCE COMPANY OF AMERICA, XYZ INSURANCE COMPANY (a fictitious entity as its identity is currently unknown),<br><br>                    Defendants. | Civil Action No. 06-02926<br><br>OPINION<br><br>May 28, 2008 |

**WIGENTON**, District Judge

      Before the Court is defendants Unum Provident Corporation and Unum Life Insurance Company of America's (individually and/or collectively "Unum" or "Defendant") motion for summary judgment and plaintiff Deborah Gill's ("Plaintiff") cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

      The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons explained below, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff.

**I.        JURISDICTION**

      The Court has jurisdiction over this matter pursuant to section 502(e) of the Employee

Case 2:06-cv-02926-SDW-MCA   Document 30   Filed 05/29/08   Page 2 of 19 PageID: 1495

Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. § 1132(e).

## II.    BACKGROUND[1]

Plaintiff was employed as a filing analyst with Chubb Group of Insurance Company.[2] As an employee, Plaintiff participated in her employer's Group Long Term Disability Insurance Plan ("Plan"), a welfare benefit plan offered to eligible employees. (Def.'s Mot. at 1.) The Plan was established and maintained by Chubb & Son ("Chubb"),[3] but funded by Unum. (Def.'s Mot. at 1.) The Plan further conferred onto Unum discretionary authority to interpret its terms and render benefit determinations accordingly. (Def.'s Mot. at 1; Veilleux Aff. at 4.)

The Plan provides for the payment of monthly long term disability benefits after a 180-day Elimination Period to a participant who provides proof of loss that the participant is disabled from his or her own occupation during the first twenty-four months of benefits and, beyond that, from any gainful occupation for which the participant is reasonably fitted by training, education or experience. (Plan at L-DEF-5.) Specifically, the Plan provides the following definition of "disability":

> "Disability" and "disabled" mean that because of injury or sickness:
>
> 1. the insured cannot perform each of the material duties of his regular occupation; and
>
> 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for

---

[1] Plaintiff did not file a Statement of Uncontested Material Facts pursuant to Local Court Rule 56.1. As such, the Court has taken Defendant's facts to be true, except where contested by Plaintiff. *See Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001) (treating the facts appearing in the defendant's Rule 56.1 statement as admitted by the plaintiff, unless disputed in the plaintiff's briefs or contradicted by the evidence).

[2] Chubb Group of Insurance Company is not a named defendant in this matter.

[3] Chubb is improperly pled as "Plan Administrator of the Chubb Group of Insurance Company Long Term Disability Plan." (Chubb's Answer at 1.) Chubb is no longer a defendant in this matter.

>which he is reasonably fitted by training, education or experience; or
>
>3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>
>a. performing at least one of the material duties of his regular occupation or another occupation on a part-time basis; and
>
>b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

(Plan at L-DEF-5.) The Plan further contains a Mental Illness Limitation, which provides that disability benefits due to *mental* illness will not exceed twenty-four months of monthly benefit payments. (Plan at L-BEN-6-L-BEN-7)(emphasis added).

On or about March 6, 2001, Plaintiff submitted to Defendant a claim for long-term disability benefits under the Plan. (Def.'s Statement at 8.) The basis of Plaintiff's claim for disability as of October 31, 2000 was "severe depression."[4] (Def.'s Statement at 8.) Accordingly, Plaintiff was informed by Defendant that her maximum benefit period for her depression would be twenty-four months. (Def.'s Statement at 10.) Plaintiff was also informed that in order to qualify for benefits exceeding twenty-four months of payments, she must be unable to perform the material duties of any occupation for which she is reasonably fitted by training, education or experience. (Def.'s Statement at 10.) Plaintiff's claim was approved on April 25, 2001, and payments commenced on April 26, 2001. (Def.'s Statement at 12.)

On April 17, 2002, after nearly a year of receiving disability benefits for her depression, Plaintiff sought to extend her disability benefits for another year on the basis of recurring symptoms

---

[4] During the initial interview regarding her claim for long-term disability benefits, Plaintiff informed Defendant that she had physical ailments in addition to having severe depression, including carpal tunnel syndrome for which she had underwent surgery in February 24, 2000. (Pl.'s Mot. at 2.)

3

of carpal tunnel syndrome. (Pl.'s Mot. at 3.) On May 17, 2002, Plaintiff visited Dr. Miller who, in his Attending Physician's Statement, confirmed that he had performed surgery on Plaintiff for carpal tunnel on February 24, 2000. (Pl.'s Mot. at 3.) Dr. Miller further indicated that Plaintiff was nevertheless released to work in her own occupation and that there were "[n]o findings with respect to [her right] hand/wrist" since her operation, and did not comment on any physical limitations or restrictions. (Def.'s Statement at 15.) Unsatisfied with Dr. Miller's treatment of her symptoms, Plaintiff informed Defendant that she would see other physicians. (Pl.'s Mot. at 3.)

On June 10, 2002, Plaintiff began treatment with Dr. Rieber. (Pl.'s Mot. at 4.) Dr. Rieber diagnosed Plaintiff with cervical radiculitis. (Pl.'s Reply at 20.) Dr. Rieber indicated Plaintiff's restrictions to be "no heavy lifting, pushing, pulling, [and] excessive sitting or computer work" and prescribed physical therapy and an MRI. The results of the MRI indicated a "[s]mall broad based central disc protrusion at C5-6 with small central and left paracentral disc protrusion at C6-7." (Pl.'s Mot. at 4.) On June 25, 2002, Plaintiff saw Dr. Tompkins who diagnosed Plaintiff with "C6-7 herniated disc with radiculopathy."[5] (Pl.'s Mot. at 4; Def.'s Statement at 17.) Thereafter, Plaintiff submitted to Defendant a Claimant's Supplemental Statement in which Plaintiff alleged disability due to a herniated disc, as well as a supplemental Attending Physician's Statement completed by Dr. Rieber on August 8, 2002 in which he noted a primary diagnosis of cervical radiculitis and right cubital tunnel syndrome and a secondary condition of clinical depression. (Def.'s Statement at 16, 17.)

Defendant submitted Plaintiff's medical information for a medical review to determine

---

[5] Plaintiff argues Defendant mischaracterizes Dr. Tompkins's review and failed to discuss epidural injections Plaintiff received for pain and other specifics of Dr. Tompkins's assessment. (Pl.'s Reply at 6-7.)

whether Plaintiff's medical documentation supported a physical impairment that would impact functional capacity. (Def.'s Statement at 18.) On October 28, 2002, Krista Poissant ("Therapist Poissant") noted small disc protrusions at two levels in the C-spine, but concluded that these findings did not significantly correlate with Plaintiff's symptoms and Dr. Tompkins's findings. (Def.'s Statement at 19.) Therapist Poissant concluded that Plaintiff's physical restrictions and limitations included repetitive or prolonged neck extension and any lifting of greater than twenty pounds. (Def.'s Statement at 19.) Plaintiff's file and Therapist Poissant's findings were subsequently referred to Dr. R. B. Keller ("Dr. Keller"). (Def.'s Statement at 19.) Dr. Keller concluded that Plaintiff's diagnosis of radiculopathy was not supported by appropriate symptoms, neurological findings, or imaging studies, and supported Therapist Poissant's restrictions and limitation. (Def.'s Statement at 19.)

Beginning on February 28, 2003, Plaintiff began treatment with Dr. Vosough. (Pl.'s Mot. at 7.) According to the Estimated Functional Abilities form received by Defendant on March 17, 2003, Plaintiff was diagnosed with cervical radiculopathy with lumbosacral derangement. (Def.'s Statement at 21.) According to Dr. Vosough, Plaintiff's restrictions were "no forceful pulling/pushing, no heavy lifting" and her limitations were "prolonged sitting/standing." (Pl.'s Mot. at 7-8; Def.'s Statement at 21.) Dr. Vosough concluded that Plaintiff was capable of six to eight hours of sedentary activity within an eight hour work day, with frequent rest periods to stand and stretch. (Def.'s Statement at 21.) Based on Dr. Vosough's Estimated Functional Abilities form, Plaintiff's only limitation was fine manipulation with her right hand, and occasionally lifting up to twenty pounds. (Def.'s Statement at 21.)

Defendant submitted Dr. Vosough's medical documentation to Nurse Germain for a determination on whether there was a change from the prior medical reviews conducted by Therapist

Poissant and Dr. Keller. (Def.'s Statement at 22.) Nurse Germain agreed with Dr. Vosough's opinion that Plaintiff had full-time sedentary capacity with the specified restrictions and limitations. (Def.'s Statement at 22.) However, a subsequent vocational assessment indicated that Plaintiff's occupational functions would not be affected by her fine manipulation in the right hand. (Def.'s Statement at 22; Veilleus Aff., Exh. 2, (Admin. Record)[6] at UACL00942.)

On or around May 1, 2003, upon Dr. Vosough's referral that she see a rheumatologist, Plaintiff saw Dr. Chuzhin. (Pl.'s Mot. at 9, 10.) Dr. Chuzhin diagnosed Plaintiff with fibromyalgia and indicated that she was symptomatic beginning January 2002. (Def.'s Statement at 23; Pl.'s Mot. at 10.) According to Dr. Chuzhin's Additional Attending Physician's Statement, Plaintiff's restrictions included prolonged sitting, standing, walking, lifting or carrying heavy objects. (Def.'s Statement at 23.) Additionally, Dr. Chuzhin noted Plaintiff's limitations to be sitting for more than fifteen minutes, using a keyboard without increased pain, back pain, pushing, pulling, walking more than a few blocks, and driving for more than fifteen minutes. (Def.'s Statement at 23.) Dr. Chuzhin concluded that within an eight hour workday, Plaintiff would only be capable of less than one hour of sedentary activity. (Def.'s Statement at 23.) According to Dr. Chuzhin's Estimated Functional Abilities form, Plaintiff could occasionally lift/carry up to twenty pounds, bend, kneel, climb stairs, and reach above shoulders, and push/pull up to five pounds. (Def.'s Statement at 23.) On May 13, 2003, Dr. Vosough apparently concurred that Plaintiff's physical exam yielded results consistent with fibromyalgia.[7] (Pl.'s Mot. at 11; UACL00605.)

---

[6] Hereafter full citation to administrative record is omitted.

[7] In Dr. Vosough's letter dated June 10, 2003, Dr. Vosough noted that "[Plaintiff] is deemed to be disabled from her previous work tasks", however, the letter mentions both the diagnosis of fibromyalgia and that Plaintiff was followed by a psychiatrist for depression. (UACL00604.)

6

On May 30, 2003, Defendant forwarded the additional medical information for a medical review from Dr. Chuzhin to Nurse Weiss. (Def.'s Statement at 24.) Nurse Weiss concluded that Dr. Chuzhin's information only further supported Dr. Keller's opinion from October 2002 that Plaintiff did not have radiculopathy. (Def.'s Statement at 24.) Nurse Weiss determined that although degenerative disc disease may contribute to general back pain, it should not impede Plaintiff's sedentary level of function in the absence of nerve root or spinal cord compression. (Def.'s Statement 25.) Nurse Weiss's determination was thereafter referred to Dr. Snyder who concurred. (Def.'s Statement at 25.)

By correspondence dated June 24, 2003, Defendant informed Plaintiff that as the medical evidence did not support a finding of a disability that would preclude Plaintiff from working in her own or any other occupation for which she is reasonably fitted and entitling her to ongoing disability benefits (i.e., disability benefits exceeding twenty-four months of payments), her claim for ongoing disability benefits was denied. (Def.'s Statement at 26; UACL00946-49.) Specifically, Defendant noted that Plaintiff "does not at this point have clinical evidence of frank radiculopathy or spinal stenosis" and further "in the absence of nerve root or spinal cord compression, it should not impede a sedentary level of function." (Def.'s Statement at 26.) Defendant also notified Plaintiff of her right to appeal. (Def.'s Statement at 27.)

On July 14, 2003, Plaintiff appealed her claim determination.[8] (Def.'s Statement at 27.) Subsequently, Defendant referred Plaintiff's file for a medical review, which was completed by Dr. Snyder on August 25, 2003. (Def.'s Statement at 27.) Dr. Snyder concluded that the only restriction

---

[8] Plaintiff neither followed up with Dr. Chuzhin, nor did she submit any additional medical records with her appeal. (Pl.'s Reply at 22; Def.'s Statement at 27.)

that was supported was no continuous sitting without a short stretch break every one to two hours. (Def.'s Statement at 27.) Plaintiff's file was then referred for a vocational assessment, which was completed by Richard Byard ("Mr. Byard"). (Def.'s Statement at 28.) Mr. Byard concluded that Plaintiff's restriction and limitations would not preclude the performance of her own occupation as an Administrative Analyst. (Def.'s Statement at 29.)

By correspondence dated June 24, 2003, Defendant informed Plaintiff that she had received the maximum level of benefits resulting from her mental illness and that benefit period ended April 25, 2003. (Def.'s Statement at 29.) Defendant also explained to Plaintiff that she did not qualify for ongoing disability benefits based on any physical disability because she did not otherwise suffer from a medical condition so severe as to preclude her from working in her own occupation or any other gainful occupation for which she was qualified. (Def.'s Statement at 29-30.) At this point, Plaintiff had exhausted all administrative remedies under the Plan. (Def.'s Statement at 31.)

On June 23, 2006, Plaintiff filed a Complaint against Defendant and the other named parties in this matter, alleging wrongful denial of benefits and breach of fiduciary duty in violation of ERISA.[9] (Pl.'s Compl. ¶¶ 25-27.) In August 2007, both Plaintiff and Defendant filed their respective motions for summary judgment. As Plaintiff subsequently agreed to dismiss her fiduciary claim (*see* Pl.'s Opp'n at 15), only Plaintiff's wrongful denial of benefits claim is at issue before the Court.

### III.   LEGAL STANDARD

   *A.   Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories

---

[9] Although filed with the Court on June 23, 2006, Plaintiff dated the Complaint "April 24, 2006." (*See* Pl.'s Compl. at 6.)

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and material if it could affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets this initial burden, it then shifts to the nonmoving party who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter; rather, it is to determine whether genuine issues of material fact exist. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

**IV.   DISCUSSION**

As there are no genuine issues of material facts in dispute, this matter is appropriate for summary judgment. The following is a discussion of the arguments raised by the parties.

   *A.   Statute of Limitations*

Defendant argues that Plaintiff's action is time-barred under the Plan's three-year period of limitation.[10] (Def.'s Mot. at 7.) Defendant states, "any legal action must be brought within three

---

[10] The Plan provides that a claimant may not commence any legal action "until 60 days after proof of claim has been given," but not "more than 3 years after the time proof of claim is required." (Plan, sec. VI: General Policy Provisions, at 3.)

years after proof of claim is required to be submitted, or [in Plaintiff's case] July 25, 2001." (Def.'s Mot. at 7.) Thus, Defendant maintains that Plaintiff had until July 25, 2004 to commence her action, but did not do so "until June 23, 2006 . . . more than two years after the period of limitations expired." (Def.'s Mot. at 7, 11.)

Plaintiff does not dispute that a claim seeking a continuation of benefits for mental illness would be time-barred. (Pl.'s Opp'n at 11.) Rather, Plaintiff argues that the application for benefits at issue is based on her physical, not mental, disabilities and was a new claim. (Pl.'s Opp'n at 11.) As Plaintiff states: "If [Plaintiff] was seeking to continue a disability for mental illness, the sole basis upon which her initial application was granted, [D]efendant's argument would make sense and [Plaintiff] would be time-barred. However, as the application for disability was based on a brand new complaint . . . the complaint was timely filed."[11] (Pl.'s Opp'n at 11.) Thus, Plaintiff contends that the period of limitation began to run on the date she was denied continuing disability benefits based on her physical disabilities. (Pl.'s Opp'n at 11.)

ERISA contains a six-year statute of limitation for claims alleging breach of fiduciary duty, but does not provide a statute of limitation for bringing non-fiduciary claims, such as wrongful denial of benefits. *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n.2 (3d Cir. 2007). The applicable period of limitation for non-fiduciary claims, then, is "that of 'the forum state claim most analogous to the ERISA claim at hand.'" *Miller*, 475 F.3d at 520 n.2 (quoting *Romero v. Allstate Corp.*, 404

---

[11] Plaintiff argues that Plaintiff's later claim was not even asserted until June 10, 2002. (Pl.'s Opp'n at 11.) This application was the "request of a new claim for long term disability benefits."(Pl.'s Opp'n at 11.)

F.3d 212, 220 (3d Cir. 2005)).[12]  However, an ERISA plan itself may provide for a shorter limitation period, so long as that period is reasonable.  *See Mirra v. Holland Am. Line*, 331 N.J. Super. 86, 91 (App. Div. 2000).  The Court finds that the Plan's three-year period of limitation is reasonable, and therefore, enforceable.  Applying the Plan's three-year period of limitation, the Court finds that Plaintiff's claim for continuing disability based on physical disability would be time-barred, but for the reasons discussed below will analyze Plaintiff's claims as if timely filed.

Defendant submits that the period of limitation began to accrue on July 25, 2001, and ended three years from that date on July 25, 2004.  (Def.'s Mot. at 7.)  This calculation is derived from Plaintiff's claim for disability benefits due to mental illness.  Pursuant to the Plan, proof of claim must be provided within ninety days after the end of the elimination period.  (Plan, sec. VI; General Policy Provisions, at 2.)  Defendant determined Plaintiff's date of disability to be October 28, 2000, the date when Plaintiff first received medical treatment for her mental illness.  (Def.'s Statement at 12 n.1)  Plaintiff became eligible for benefits on April 26, 2001, when the Plan's 180-day Elimination Period expired.  (Def.'s Statement at 12 n.1.)  Plaintiff was then required to submit proof of claim within ninety days at the end of the Elimination Period, or, no later than July 25, 2001.  Thus, if Plaintiff had any dispute as to the determination of her mental illness, Plaintiff would have until July 25, 2004 to commence a lawsuit against Defendant.  As Plaintiff concedes, if Plaintiff was seeking to continue a disability for mental illness, Defendant's argument would be correct and Plaintiff would be time barred."  (Pl.'s Opp'n at 11.)

However, Plaintiff does contest Defendant's determination that Plaintiff's *physical* disabilities

---

[12] Thus, Plaintiff's wrongful denial claim, which is most analogous to a breach of contract claim, would receive a six-year limitation period.  *See* N.J. Stat. Ann. § 2A:14-1 (West 2008).

do not preclude her from any gainful occupation for which Plaintiff is reasonably fitted, and that Plaintiff is therefore ineligible for disability benefits continuing beyond twenty-four months of coverage. As Plaintiff maintains: "This application was the request of a new claim for long term disability benefits. It was this new claim that was denied." (Pl.'s Opp'n at 11.) Therefore, Plaintiff argues the proper calculation for the period of limitation as to Plaintiff's dispute of her continuing disability benefits determination would be three years from the date proof of claim was required for Plaintiff's alleged fibromyalgia and physical claims. Defendant argues that Plaintiff's physical conditions began earlier and were considered. Accordingly, as Plaintiff instituted her action against Defendant on June 23, 2006, Plaintiff's claim is time-barred. However, Plaintiff argues that Plaintiff's fibromyalgia claim was not even addressed by Defendant until May 1, 2003. (Pl.'s Mot. at 15.)

While Defendant's interpretation of the Plan does not conflict with the Plain language of the Plan, the Plan itself is not clear on how overlapping mental and physical disability would be treated for the purpose of statutes of limitations and determination of benefits.[13] Even if the Court were to accept Defendant's position, the Court finds that based on the clear repudiation rule it is less clear that Plaintiff's claim is time-barred and thus will give Plaintiff the benefit of reviewing the claim as timely.

---

[13] Defendant contends that Plaintiff received a clear repudiation of her claim for continuing disability benefits on April 25, 2001, the date when she became eligible for disability benefits based on her mental disabilities. (Def.'s Mot. at 7.) However, the Court finds that a clear repudiation of Plaintiff's claim for continuing disability, which were based on her physical ailments, at the latest was given to Plaintiff on June 24, 2003, when Defendant advised Plaintiff that her physical disabilities did not preclude an ability to work so as to entitle her to benefits continuing beyond twenty-four months. *See Miller*, 475 F.3d at 520-21(discussing rule where "cause of action accrues when a claim for benefits has been denied").

B.      *Plaintiff's Wrongful Denial of Benefits Claim*

Defendant contends that its determination that Plaintiff did not satisfy the definition of disability so as to entitle her to continuing disability benefits "is supported not only by the multiple medical and vocational reviews conducted by Unum's physician and vocational consultants who analyzed all of the proofs submitted [by Plainitff], but also by the findings and conclusions of five of [Plaintiff's] own treating physicians." (Def.'s Mot. at 12.) Defendant further asserts that its determination was not arbitrary and capricious and should be accorded deference by the Court. (Def.'s Mot. at 19.)

Plaintiff, on the other hand, argues that Defendant's determination "failed to take into consideration numerous entries . . . and focused only on specific aspects that Unum used to issue its denial. Specifically, UNUM completely disregards [P]laintiff's diagnosis of fibromyalgia." (Pl.'s Mot. at 15.) Plaintiff therefore maintains that "[t]he determination by the reviewing practitioners of UNUM to the contrary is unsubstantiated by evidence and was an action taken in a manner arbitrary and capricious and should be reversed." (Pl.'s Opp'n at 14.)

A wrongful denial of benefits claim under ERISA § 1132(a)(1)(B) "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a benefit plan confers to an administrator discretionary authority to construe the terms of the plan or to determine eligibility for benefits, "trust principles make a deferential standard of review appropriate." *Id.* at 111-12. Therefore, the denial of benefits will be reversed only if the administrator's decision was arbitrary and capricious. *See id.* at 115. Under the arbitrary and capricious (or abuse of discretion) standard, the court "may overturn

13

a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (quoting *Adamo v. Anchor Hocking Corp.*, 720 F. Supp. 491, 500 (W.D. Pa. 1989)).

However, when an insurance company both funds the plan and determines eligibility for benefits, a conflict of interest is presumed, and the denial of benefits is reviewed under a heightened arbitrary and capricious standard. *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). Under a heightened arbitrary and capricious standard, "the intensity of scrutiny . . . increases commensurately with the level of conflict found to exist."[14] *Sarlo v. Broadspire Servs., Inc.*, 439 F. Supp. 2d 345, 357 (D.N.J. 2006). Notably, even under a heightened arbitrary and capricious standard, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc.*, 298 F.3d 191, 199 (3d Cir. 2002)(a court may not simply substitute its own judgment for that of the plan administrator).

The Court finds that a heightened arbitrary and capricious standard is appropriate in this matter because Defendant both funds the Plan and makes claim determinations. (*See* Def.'s Statement at 2.) Notwithstanding this heightened standard of review, as discussed below, the Court finds that Defendant's determination that Plaintiff's physical disability did not preclude her from any kind of work so as to entitle Plaintiff to continuing disability benefits was supported by substantial evidence in the record.

The administrative record provides substantial evidence to support Defendant's determination

---

[14] In applying this "sliding scale" approach, "[t]he court may take into account the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the company." *Pinto*, 214 F.3d at 392.

that Plaintiff's physical disabilities did not preclude her from any kind of work so as to entitle her to continuing disability benefits. For example, Dr. Miller, who saw Plaintiff on May 17, 2002 following complaints of an alleged recurrence of carpal tunnel syndrome, found "[n]o findings with respect to [Plaintiff's right] hand/wrist" and provided no physical restrictions and limitations. (UACL00373.) Dr. Rieber, who subsequently saw Plaintiff on June 10, 2002, noted restrictions of "heavy lifting, pushing, pulling, [and] . . . excessive sitting or computer work." (UACL00380-UACL00381.) Despite these restrictions, Dr. Rieber released Plaintiff to return to work in her own occupation. (Def.'s Statement at 30.)

Dr. Tompkins, who evaluated Plaintiff's physical condition on July 25, 2002, diagnosed Plaintiff with "C6-7 herniated disc with radiculopathy," but could not offer an assessment on Plaintiff's work and functional capacity. (Def.'s Statement at 17-18.) In a medical review conducted on October 28, 2002, Therapist Poissant concluded that "[t]hese findings do not correlate significantly with [Plaintiff's] symptoms and [physical evaluation] findings. Given the fact that a protrusion is noted, it would be reasonable to support [restrictions and limitations] of no repetitive or prolonged neck extension, and no lifting [greater than] 20 [pounds]." (Def.'s Statement at 19.)[15]

Additionally, Dr. Vosough, after conducting a physical examination of Plaintiff on February 28, 2003, diagnosed Plaintiff with cervical radiculopathy with lumbosacral derangement, and recommended "no forceful pulling/pushing, no heavy lifting" and "prolonged sitting/standing." (Def.'s Statement at 21.) Despite these restrictions and limitations, Dr. Vosough stated that Plaintiff was nevertheless capable of six to eight hours of sedentary activity within an eight-hour workday,

---

[15] Dr. Keller, who reviewed Nurse Poissant's findings, further stated: "The diagnosis of radiculopathy is not supported by appropriate symptoms, neurological findings or imaging studies. [Restrictions and limitations] as noted are appropriate." (Def.'s Statement at 19.)

with frequent rest periods to stand and stretch. (Def.'s Statement at 21.) Dr. Vosough also stated that Plainitff's limitation with respect to her hand was "fine manipulation with her right hand." (Def.'s Statement at 21.) However, a subsequent medical review indicated that Plaintiff's "occupation requires frequent handling and fingering" and that "[n]either of these functions is defined as fine manipulation." (Def.'s Statement at 22.)

Overall Plaintiff relied heavily on Dr. Chuzhin's findings and diagnosis, but significant support for Dr. Chuzhin's findings was not evident in the other medical professionals' review and documentation to the extent to find Plaintiff disabled. Given the evidence from the physicians and reviewing medical professionals, Defendant's determination that Plaintiff's physical condition did not prevent her from performing any gainful occupation so as to entitle her to continuing disability benefits was reasonable and supported by substantial evidence in the record. Thus, Defendant's claim determination was not arbitrary and capricious, even under a heightened standard.

Plaintiff contends, however, that Defendant "completely disregard[ed] [P]laintiff's diagnosis of fibromyalgia." (Pl.'s Mot. at 15.) However, the Court finds that Defendant gave Plaintiff's diagnosis due consideration. When Defendant received the Additional Physician's Statement and Estimated Functional Abilities form completed by Dr. Chuzhin, Defendant forwarded it to Nurse Weiss for a medical review, who concluded that "degenerative disc disease can contribute to some general back pain, however, in the absence of nerve root or spinal cord compression[,] should not impede sedentary level of function . . . Dr. Chuzhin does not discuss work restrictions." (Def.'s Statement at 23-25.) Nurse Weiss's medical review was then forwarded to Dr. Snyder who concurred

16

with Nurse Weiss's conclusions.[16] (Def.'s Statement at 25.) In the denial letter dated June 24, 2003, Defendant also stated that Plaintiff's claim for disability due to fibromyalgia had been reviewed, but did not support the position that Plaintiff was precluded from work. (*See* UACL00946-49.)

The June 24, 2003 letter informed Plaintiff that if she had additional support for her claim it should be submitted within 90 days of the date of the letter. (*See* UACL00946.) Plaintiff was afforded several opportunities to provide further support to her fibromyalgia diagnosis and physical claims. Notably, neither Dr. Chuzhin nor Plaintiff, provided additional support for her fibromyalgia claim.[17] (Def.'s Statement at 27.) For example, in response to Plaintiff's request for the completion of updated claim forms, Dr. Chuzhin simply stated she "had nothing more to add in regard to [Plaintiff's] condition, which has already been addressed, in both the consultation letter and the Unum Physician's Statement that she completed."[18] (*See* Def.'s Statement at 25; UACL00566.)

When Plaintiff was denied continuing disability benefits on June 24, 2003, Plaintiff was informed of her right to appeal and subsequently, by correspondence dated July 14, 2003, Plaintiff did appeal the claim determination. (Def.'s Statement at 26-27.) In appealing her denial, however, Plaintiff did not submit any additional medical records that could have provided further support to her physical disability and her inability to work. (Def.'s Statement at 27.) Given the proof Defendant had with regard to Plaintiff's diagnosis and ability to work, Defendant reasonably concluded that the

---

[16] Dr. Snyder opined that Dr. Chuzhin's recommendation was "inconsistent with her medical findings, recommended therapy and reported activities." (UACL00545)

[17] On or about August 12, 2003, Plaintiff indicated that she did not follow up with Dr. Chuzhin for treatment because of a lack of benefits. (Pl.'s Reply Statement of Facts at 22.)

[18] Plaintiff notes that "UNUM also has a provision in their policy that could have been exercised to gather more information concerning plaintiff's condition." (Pl.'s Reply Statement of Facts at 22.) However, the Court notes that Defendant made adequate attempts to review Plaintiff's information.

medical evidence "did not support a finding of continued disability after the expiration of the Plan's 24-month own occupation period and 24-month Mental Illness Limitation."[19]  (Def.'s Statement at 25-26.)

For the foregoing reasons, the Court concludes that Defendant's claim determination was not arbitrary and capricious, even under a heightened standard.  Defendant's determination that Plaintiff's physical conditions were not to an extent as to preclude her from any gainful occupation was supported by substantial evidence in the record.  Defendant's determination was not erroneous as a matter of law.  Accordingly, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff.

C.     Attorney's Fees

In actions brought under ERISA, attorney's fees may be awarded to the prevailing party.  29 U.S.C. § 1132(g)(1) (providing that "the court, in its discretion may allow a reasonable attorney's fees and costs of act to either party"); *McPherson v. Employee's Pension Plan of Am. Re-Insurance Co., Inc.*, 33 F.3d 253, 254 (3d Cir. 1994).  In exercising its discretion, courts must consider the following factors: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. *Id.* (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)).  The Court finds that Plaintiff's Complaint was not brought against Defendant in bad

---

[19] Plaintiff notes that based Dr. Vosough's documents Plaintiff was approved for benefits.  (Pl.'s Reply at 9.) However, approval for Social Security benefits is not the standard before this Court.  *See Pokol v. E.I. du Pont de Nemours and Co., Inc.*, 963 F.Supp. 1361, 1379 (D.N.J. 1997) ("Social Security determinations are not binding on ERISA plans. . ." (internal citations omitted))

faith. Taking all of the aforementioned factors into consideration, the Court finds that attorney's fees are not warranted in this matter. Therefore, the Court denies Defendant's request for attorney's fees.

## V.   CONCLUSION

For the foregoing reasons, the Court grants summary judgment for Defendant and denies summary judgment for Plaintiff.

s/Susan D. Wigenton, U.S.D.J.

cc: Magistrate Judge Madeline C. Arleo